Slip Op. 13-56

## UNITED STATES COURT OF INTERNATIONAL TRADE

---

LERNER NEW YORK, INC.,

                Plaintiff,

v.

UNITED STATES,

                Defendant.

---

Before: Timothy C. Stanceu, Judge

Court No. 07-00361

## OPINION

[Determining the tariff classification of a women's garment]

Dated: May 1, 2013

*Frances P. Hadfield*, *Alan R. Klestadt* and *Robert B. Silverman*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY.

*Beverly A. Farrell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Justin R. Miller* and *Karen V. Goff*), of New York, NY for defendant United States. With her on the briefs were *Tony West*, Assistant Attorney General and *Barbara S. Williams*, Attorney in Charge, International Trade Field Office. Of counsel on the briefs was *Michael W. Heydrich*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Stanceu, Judge: Plaintiff Lerner New York, Inc. ("Lerner")[1] brought this action to contest

the tariff classification that U.S. Customs and Border Protection ("Customs" or "CBP") applied

to a women's garment made of predominantly-nylon knitted fabric and containing an interior

---

[1] Plaintiff Lerner New York, Inc. ("Lerner") is now known as New York & Company. Joint Pretrial Order ("JPO"), Schedule C ¶ 1 (Nov. 28, 2011), ECF No. 49. Through 2005, Lerner was a subsidiary of Limited Brands, the parent company of Victoria's Secret Direct, LLC. Pls.' Post-Trial Br. 11 n.3 (Feb. 22, 2012), ECF No. 67; Tr. 31.

fabric insert marketed as a "shelf bra."  The garment, Lerner style number 9843233, was

marketed under the description "Bodyshaper" and imported by Lerner in July 2005.  Compl.

¶¶ 7, 15 (Oct. 10, 2007), ECF No. 2; Pl.'s Ex. 1.  The garment is worn on the upper body, has

narrow straps, and has no shoulder or neck coverage.  *Id*. ¶¶ 16, 21, 24.  Defendant United States

maintains that the Bodyshaper is properly classified in a residual provision for knitted garments

made of man-made fibers, as Customs determined upon liquidation.  Answer 4 (Mar. 13, 2008),

ECF No. 7.  Plaintiff claims classification of the Bodyshaper as a "brassiere" or similar article.

Based on the findings of fact and conclusions of law stated herein, reached following a

bench trial, the court concludes that the tariff classification determined by Customs upon

liquidation, and advocated before the court by defendant, is correct.

## I. BACKGROUND

Lerner entered a shipment of Bodyshapers on May 27, 2005 at the Port of Long Beach,

California on entry number 113-3085123-6.  Compl. ¶¶ 2-3; Summons (Jul. 12, 2007), ECF

No. 1 (Court No. 07-00260).[2]  The commercial invoice described the garment as "Ladies 92 pct

nylon 8 pct spandex knitted top bodyshaper w/ shelf bra."  Joint Pretrial Order, Schedule C ¶ 4

(Nov. 29, 2011), ECF No. 52 ("JPO").  Upon liquidating the entry on April 7, 2006, Customs

classified the merchandise in subheading 6114.30.10, Harmonized Tariff Schedule of the United

States ("HTSUS") (2005) ("Other garments, knitted or crocheted: Of man-made fibers: Tops"),

---

[2] Lerner's challenge to the classification of style number 9843233 (the "Bodyshaper"),
was originally included in Court No. 07-00260.  Summons (Aug. 12, 2007), ECF No. 1 (Court
No. 07-00260).  On September 27, 2007, the court ordered, on Lerner's unopposed motion, that
protest number 2704-06-101253 and entry number 113-3085123-6 be severed from Court
No. 07-00260.  Court No. 07-00361 was assigned to an action brought on the severed protest and
entry.  Order (Sept. 27, 2007), ECF No. 1.

at 28.2% *ad val*.[3]  Compl. ¶ 9; Answer 4.  Lerner timely protested the determination of

classification on June 27, 2006 (protest no. 2704-06-101253).  Summons 3.  Customs denied the

protest on February 2, 2007 without issuing an official ruling.  *Id*.  On August 12, 2007, Lerner

timely filed its summons, *id.*, and on November 21, 2007, Lerner filed its complaint, claiming

classification in subheading 6212.90.00, HTSUS ("Brassieres, girdles, corsets, braces,

suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted:

Other"), at 6.6% *ad val*., Compl. ¶¶ 10-25.

Due to the presence of common issues of fact, the court directed that this case be tried

jointly with *Victoria's Secret Direct, LLC v. United States*, Court No. 07-00347.[4]  The parties

submitted identical post-trial briefing in the *Victoria's Secret* and *Lerner* actions.  Pls.' Post-Trial

Br. (Feb. 22, 2012), ECF No. 67 ("Pl.'s Mem."); Def.'s Post-Trial Mem. of Law (Feb. 22, 2012),

ECF No. 66.  Plaintiff responded to defendant's post-trial brief on March 23, 2012.  Resp. to

Def.'s Post-Trial Br. (Mar. 23, 2012), ECF No. 70 ("Pl.'s Resp.").[5]

---

[3] Because the entry at issue in this case occurred in 2005, the court's citations to the Harmonized Tariff Schedule of the United States ("HTSUS") are to the 2005 version.

[4] *Victoria's Secret Direct, LLC v. United States*, Court No. 07-00347, involved the classification of a garment marketed as the "Bra Top," a women's sleeveless outerwear garment made of knit fabric that contained an interior fabric insert marketed as the "shelf bra."  Compl. ¶¶ 6, 18 (Nov. 21, 2007), ECF No. 5 (Court No. 07-00347).  In those respects, the Bra Top was similar to the garment at issue in this action.

[5] Following submission of post-trial briefs, defendant filed a motion to strike portions of plaintiff's post-trial brief and a motion for oral argument.  Def.'s Mot. (1) To Strike and Disregard Certain Portions of Pls.' Post-Trial Brs. and (2) To Req. Oral Arg. 3, 8 (Mar. 1, 2012), ECF No. 68.  Plaintiff opposed defendant's motion to strike but not its motion for oral argument. Pls.' Resp. in Opp'n to Def.'s Mot. to Strike and Disregard Certain Portions of Pls.' Post-Trial Br. 1-2, 12 (Mar. 20, 2012), ECF No. 69.  The court denied defendant's motion to strike and also its motion for oral argument.  Order (May 1, 2013), ECF No. 71.

## II. DISCUSSION

The court exercises jurisdiction over this action pursuant to Section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(a).[6]  In cases contesting the denial of a protest, the court

makes its findings of fact *de novo* based upon the record made before the court, 28 U.S.C.

§ 2640(a).  The plaintiff has the burden of establishing that the government's classification of the

subject merchandise was incorrect but does not bear the burden of establishing the correct

classification; instead, it is the court's independent duty to arrive at "the *correct* result, by

whatever procedure is best suited to the case at hand."  *Jarvis Clark Co. v. United States*,

733 F.2d 873, 878 (Fed. Cir. 1984).  In making this determination, the court "must consider

whether the government's classification is correct, both independently and in comparison with

the importer's alternative."  *Id.*  While "[t]he proper scope and meaning of a tariff classification

term is a question of law[,] . . . determining whether the goods at issue fall within a particular

tariff term as properly construed is a question of fact."  *Franklin v. United States*, 289 F.3d 753,

757 (Fed. Cir. 2002) (citations omitted).

On questions of law, a classification decision of Customs may be accorded a "respect

proportional to its 'power to persuade.'"  *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)

(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  But when Customs has summarily

denied a protest of the classification without issuing an official ruling, the court considers the

parties' arguments without deference.  *Hartog Foods v. United States*, 291 F.3d 789, 791 (Fed.

Cir. 2002).  Pursuant to 28 U.S.C. § 2639(a)(1), a trial begins with a statutory presumption of

correctness for the factual components of a Customs classification decision.  To overcome the

presumption, the party challenging that decision must produce a preponderance of evidence on a

---

[6] All statutory citations herein are to the 2006 edition of the United States Code.

disputed factual question.  *See Universal Elecs., Inc. v. United States*, 112 F.3d 488, 492 (Fed.

Cir. 1997).  In the resolution of disputed facts, "the merchandise itself is often a potent witness."

*Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citations omitted).

     Classification under the HTSUS is determined according to the General Rules of

Interpretation ("GRIs") and, if applicable, the Additional U.S. Rules of Interpretation ("ARIs").

GRI 1 requires that tariff classification, in the first instance, "be determined according to the

terms of the headings and any relative section or chapter notes."  GRI 1, HTSUS.  The chapter

and section notes of the HTSUS are not optional interpretive rules but statutory law.  *Libas, Ltd.*

*v. United States*, 193 F.3d 1361, 1364 (Fed. Cir. 1999).  Once imported merchandise is

determined to be classifiable under a particular heading, a court must look to the subheadings to

find the correct classification of the merchandise in question.  *Orlando Food Corp. v. United*

*States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998) (citations omitted).

     Tariff acts are construed to carry out the intent of Congress, which is initially determined

by looking at the language of the statute itself.  *Rubie's Costume Co. v. United States*, 337 F.3d

1350, 1357 (Fed. Cir. 2003) (citations omitted).  When "a tariff term is not defined in either the

HTSUS or its legislative history, the term's correct meaning is its common or dictionary

meaning in the absence of evidence to the contrary."  *Russell Stadelman & Co. v. United States*,

242 F.3d 1044, 1048 (Fed. Cir. 2001) (citations omitted).  In the absence of a showing of a

commercial designation, the common meaning and commercial meaning of a tariff term are

presumed to be the same.  *Id*. at 1048-49; *see also Carl Zeiss, Inc. v. United States*, 195 F.3d

1375, 1379 (Fed. Cir. 1999).  In construing tariff terms, the court may "consult lexicographic and

scientific authorities, dictionaries, and other reliable information" or may rely on its "own

understanding of the terms used."  *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333,

1337-38 (Fed. Cir. 1999) (citation omitted).  Although "not legally binding," the Explanatory

Notes ("ENs") to the Harmonized Commodity Description and Coding System ("Harmonized

System" or "HS"), maintained by the World Customs Organization, "may be consulted for

guidance and are generally indicative of the proper interpretation of a tariff provision." *Degussa*

*Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citing *Motorola, Inc. v. United*

*States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006)).  Where a tariff term has various definitions or

meanings and has broad and narrow interpretations, the court must determine which definition

best expresses the congressional intent.  *Richards Medical Co. v. United States*, 910 F.2d 828,

830 (Fed. Cir. 1990).

       In this action, plaintiff claims classification of the Bodyshaper in subheading 6212.90.00,

HTSUS ("[b]rassieres, girdles, corsets . . . and similar articles . . . whether or not knitted or

crocheted: Other"), at 6.6% *ad val*.  The government advocates classification of the Bodyshaper

in subheading 6114.30.10, HTSUS ("Other garments, knitted or crocheted: Of man-made fibers:

Tops") at 28.2% *ad val*.

       Based on the factual findings and conclusions of law set forth below, the court

determines that the Bodyshaper is properly classified in subheading 6114.30.10, HTSUS.  The

court rejects plaintiff's classification claim because the Bodyshaper does not answer to the article

description for heading 6212, HTSUS.

                    A.  Findings of Fact Pertaining to the Bodyshaper

       The following uncontested facts were agreed to by the parties in the joint pretrial order

entered by the court on November 29, 2011:[7]

_____

       [7] Certain uncontested facts in the joint pretrial order are taken from defendant's response
to plaintiff's first request for admissions directed to defendant, plaintiff's exhibit 6.  Pursuant to
(continued…)

1.  The marketing name for Lerner style 9843233 is the "Bodyshaper."  JPO, Schedule C ¶ 14.

2.  The commercial invoice describes the Bodyshaper as a "[l]adies 92 pct nylon 8 pct spandex knitted top bodyshaper w/ shelf bra."  JPO, Schedule C ¶ 4.

3.  The Bodyshaper is made of knit fabric that is 92% nylon and 8% spandex.  JPO, Schedule C ¶¶ 8-9.

4.  The Bodyshaper is an upper body garment designed to be worn next to the skin and without a separate brassiere.  JPO, Schedule C ¶¶ 7, 24-25.

5.  The Bodyshaper contains an interior fabric layer inside the upper portion of the garment, referred to as a "shelf bra," which is designed to cover the bust.  JPO, Schedule C ¶¶ 11, 13.

6.  The built-in shelf bra is attached solely at the top of the garment, the bottom of the shelf bra not being attached to the outside fabric layer of the garment.  JPO, Schedule C ¶¶ 27-28.

7.  The built-in shelf bra has an elastic band at the bottom.[8]  JPO, Schedule C ¶ 12.

8.  The built-in shelf bra is designed to be form-fitting over the bust of the wearer.[9]  JPO, Schedule C ¶ 23.

9.  The Bodyshaper has adjustable 3/8" straps that go over the wearer's shoulders.  JPO, Schedule C ¶¶ 16, 21-22.

10. The Bodyshaper is sold in sizes XS-XL.  JPO, Schedule C ¶¶ 18-19.

---

(continued…)

USCIT Rule 36(b), the admissions contained in defendant's response are deemed "conclusively established" as no motion for withdrawal or amendment of the admissions has been made.

[8] Defendant's response to plaintiff's first request for admissions contains an admission that the elastic band of the shelf bra is designed to be worn under the bust of the wearer.  Pl.'s Ex. 6 (Resp. 19).

[9] Defendant's response to plaintiff's first request for admissions contains an admission that the shelf bra changes the natural shape of the breasts of the wearer, Pl.'s Ex. 6 (Resp. 16), while providing more breast support than a T-shirt, *id*. at Resp. 38, and support and lift comparable or superior to that of soft-cup brassieres produced by "Hanro" and "Wacoal," *id*. at Resps. 35-36.

### 1.  Findings of Fact Established by Non-Testimonial Evidence

From its *in camera* inspection of two samples of the Bodyshaper, admitted into evidence

as plaintiff's Exhibit 11 and defendant's Exhibit A, the court finds, by a preponderance of the

evidence, certain facts pertaining to the physical characteristics of the Bodyshaper, as follows.

One sample is a size medium in fuchsia and the other a size medium in celadon green; each is a

knitted garment made up of opaque fabric labeled as 92% nylon and 8% spandex, a fabric that

has an elastic "stretch" quality.  Pl.'s Ex. 11, Def.'s Ex. A.  The garment has a low neckline

shaped to form a wide U at the front, with the fabric tapering upward to the shoulders, where the

3/8" hem sewn on to the upper edge of the garment converges with the straps.  *Id*.  The neckline

in the back of the garment is straight rather than U-shaped.  *Id*.  The garment's 3/8-inch-wide

straps do not appear to be comprised of the body fabric of the front of the garment, but rather,

appear to be integral with the hem sewn onto the upper portion of the body fabric, each strap

consisting of a double thickness of the hem fabric.  *Id*.  Each strap contains a ring and a slider,

allowing the length to be adjusted by the wearer.  *Id*.  In the back of the garment, the straps are

fastened to the rings, which are fastened to the upper portion of the Bodyshaper's body fabric

with short straps consisting of a double thickness of the hem fabric.  *Id*.  The "shelf bra"

component consists of an internal layer of the same fabric that forms the body of the garment but

with a sewn-on elastic band, approximately 7/8" wide, extending the entire circumference of the

bottom of the shelf bra component.  *Id*.  Other than the straps, no component of the shelf bra is

visible from the outside of the Bodyshaper.  *Id*.  The shelf bra is formed from two pieces of

fabric (front and back) that are sewn together and that together extend around the entire upper,

inner portion of the garment.  *Id*.  The fabric immediately above the elastic band is gathered by

the band.  *Id.*  The top of the shelf bra is attached to the body of the garment only at the upper

hem of the garment and is attached around the entire circumference of the upper hem.  *Id.*

From the other exhibits, the court finds, by a preponderance of the evidence, the

following facts.

1. Lerner's technical package describes the Bodyshaper as "Clean Finished Bodyshaper Cami," and Lerner's knit internal classification report describes the Bodyshaper as "[t]op, Bodyshaper w/shelf bra."  Pl.'s Exs. 3, 4.

2. Lerner's knit internal classification report indicates that the Bodyshaper extends to the waist.  Pl.'s Ex. 4.

3. Lerner's website marketing materials for the Bodyshaper depict the garment being worn with pants or a skirt, and often with no layering garment being worn over the Bodyshaper.  Pl.'s Ex. 5.

4. Lerner's website marketing materials for the Bodyshaper sometimes refer to the garment as a "cami" and at other times refer to the Bodyshaper as a "tank."  Pl.'s Ex. 5.

5. Lerner's internal merchandising materials ("metropak") indicate that the Bodyshaper "can be worn as a layering piece under Jackets and Sheer or Low Cut Tops."  Pl.'s Ex. 18.

### 2.  Findings of Fact Established by Testimonial Evidence

At trial, Lerner produced one witness who testified on various factual matters relevant to

the merchandising and technical design of the Bodyshaper, one witness who testified on various

factual matters relevant to the support provided by the Bodyshaper, and one witness, identified as

an expert, who testified on various matters relevant to brassiere design, construction, and fitting.

Defendant produced a single witness, identified as an expert, who testified on various matters

related to brassiere fitting, sale, and marketing.

From the evidence on the record made before the court, the court makes findings of fact

as set forth below.

a.  Findings of Fact Established by the Testimony of Ms. Hope Grey

Lerner introduced the testimony of Ms. Hope Grey, executive vice president of product life management and corporate initiatives for New York & Company.  Tr. 37.  Ms. Grey testified that she has worked for New York & Company in various roles, including director of quality assurance, vice president of technical design and quality assurance, and senior vice president of technical design and quality assurance of product development.  *Id*. at 36-37.  She also testified that she previously worked as a technical designer of soft-cup brassieres for Federated Department Stores ("Federated") and U.S. Shoe Corporation's Casual Corner division, in addition to serving in various managerial roles at those companies in which she oversaw technical design, quality assurance, and production.  *Id*. at 35-36, 110.   In addition, Ms. Grey testified that she learned to measure models while a technical designer at Federated and that she has measured hundreds of models for each of the companies at which she has worked.  *Id*. at 146-47.  The court found her testimony as a fact witness credible based on her demeanor and demonstrated knowledge concerning the technical design, fitting, and merchandising of the Bodyshaper, in addition to the technical design of soft-cup brassieres.  Ms. Grey's testimony established, by a preponderance of the evidence, the following facts.

1.  The Bodyshaper is comprised of two parts, an inner shelf bra component and outer shell, which covers the torso and is supported by two straps.  Tr. 57.

2.  The Bodyshaper is "designed to be worn as a top without a bra" and it can also be worn "as a layering piece with either a blouse, jacket, or sweater over it."  Tr. 59-60.

3.  The Bodyshaper is intended to be worn in public.  Tr. 104.

4.  One of the purposes of the Bodyshaper is to provide modesty to the wearer.  Tr. 154.

5.  The straps of the Bodyshaper are the thickness they are "[s]o that it is like a bra and it has minimal exposure [] when you're wearing it underneath another garment."  Tr. 58.

6.  In response to changing fashion trends as pants rises became lower, and in response to customer feedback for more coverage, the outer shell of the Bodyshaper was lengthened in select colors.  Tr. 140.

7.  The Bodyshaper is still sold today and is known as "the Original Bodyshaper." Tr. 103.

8.  The inner fabric portion, elastic underbust band, and straps of the Bodyshaper work together to support the bust.  Tr. 159.

9.  By raising or lowering the position of the bust using the Bodyshaper's adjustable straps, the wearer can change the garment's comfort factor.  Tr. 155.

10.  The spandex used in the Bodyshaper gives the garment stretch and recovery so that the garment can be worn by someone whose bust is larger or smaller than the size for which the garment is designed.  Tr. 144.

11.  The Bodyshaper's shelf bra does not have molded cups.  Tr. 155.

12.  Ms. Grey participated in a fitting of the Bodyshaper in November of 2009 with a fit model, the witness Christina Trainer, during which Ms. Grey performed the physical measuring.  Tr. 45-47, 72, 145-46.

13.  At the November 2009 fitting, Ms. Grey confirmed through measurement that the Bodyshaper provided bust support and lift when fitted to Ms. Trainer.  Tr. 46-47, 54-57, 72-73, 83, 86, 92.

### b.  Findings of Fact Established by the Testimony of Ms. Christina Trainer

Ms. Christina Trainer appeared as fact witness for plaintiff.  Ms. Trainer testified that she is a professional fit model specializing in the fitting of lingerie and swimsuits.  Tr. 183, 187.  Ms. Trainer testified that she has fitted thousands of garments in the six years she has been a model, including brassieres and "shelf bra camisoles" produced by Lerner.  *Id*. at 188, 190, 200, 207-08, 221.  The court found Ms. Trainer's testimony as a fact witness to be credible based on her demeanor and the detail of her testimony regarding the fitting of the Bodyshaper.  Her testimony established, by a preponderance of the evidence, the following facts.

1.  At the fitting conducted in November 2009, Ms. Trainer perceived that the Bodyshaper she modeled was more supportive than the Hanro style 1200 and the Wacoal style 835140 soft-cup brassieres, which she also modeled.  Tr. 195, 209, 224-25.

2. Ms. Trainer considered the November 2009 fitting to have been conducted in the same manner as a typical fitting.  Tr. 222.

3. Ms. Trainer was compensated for her fitting of the subject merchandise.  Tr. 209.

4. When the November 2009 fitting was conducted, Ms. Trainer was unaware that the fitting was intended to be used for litigation purposes.  Tr. 222.

### c.  Findings of Fact Established by the Testimony of Ms. Alexandra Armillas

Lerner introduced the testimony of Ms. Alexandra Armillas, a witness identified by plaintiff as an expert on the design of brassieres and other garments.  Ms. Armillas testified that she is a tenured full-time assistant professor and intimate apparel liaison in the fashion design department at the Fashion Institute of Technology in New York City, where she has taught for the past ten years.  Tr. 380-81.  Ms. Armillas testified that she has designed numerous brassieres in her career and also has designed garments similar to the Bodyshaper.  *Id.* at 384, 480.  Based on her credentials and experience, the court concludes that Ms. Armillas qualifies as an expert in the design of brassieres and in garments identical or similar to the Bodyshaper.  The court found her testimony on the design of these garments to be credible based on her demeanor and the knowledge she demonstrated in her testimony and expert witness report, plaintiff's exhibit 19.  By a preponderance of the evidence of record, including Ms. Armillas' expert testimony, the court finds the following facts.

1. A garment known in the apparel industry as a "shelf bra camisole" combines a camisole and a brassiere in a single garment, so that a third piece, a separate brassiere, need not be worn underneath.  Tr. 401, 403.

2. A shelf bra camisole is designed for two purposes, coverage and support.  Tr. 403.

3. The Bodyshaper is a type of shelf bra camisole.  Tr. 461.

4.  In the early 1990s, Ms. Armillas designed shelf bra camisoles.  Tr. 480.[10]

5.  The Bodyshaper cannot be separated into two independently functioning garments because the straps would have to be used for both garments.  Tr. 470-71.

6.  The Bodyshaper's cup, underbust band, and straps all work together to provide support to the wearer's bust.  Tr. 409.

7.  The straps of the Bodyshaper are not integral with the body of the garment, *i.e.*, the straps are not built up from the fabric that constitutes the body of the garment.  Tr. 479-80.

8.  The shelf bra feature of the Bodyshaper provides support in a manner identical to that of soft-cup brassieres produced by Wacoal and Hanro.  Tr. 401.

9.  Ms. Armillas conducted a fitting of the Bodyshaper in August 2010 with Ms. Trainer as the fit model.  Tr. 399-400.

10.  At the August 2010 fitting, Ms. Armillas confirmed visually and through measurement that the Bodyshaper provided bust support as a result of the presence of the shelf bra. Tr. 409, 453.

### d.  Testimony of Ms. Cindy Johnson

Defendant introduced at trial the testimony of Ms. Cindy Johnson, who testified that since 1998 she has owned and operated a small lingerie boutique in Denver, Colorado that sells high-end brassieres and other women's garments.  Tr. 497-98.  In particular, she testified that her store sells traditional European brassieres, *id*. at 555-56, at retail prices upwards of $110, *id*. at 555.  She added that her store does not sell the Bodyshaper but sells garments that Ms. Johnson considers to be somewhat similar to the Bodyshaper.  *Id*. at 533.

Without objection from plaintiff, defendant moved to qualify Ms. Johnson as an expert witness "in the fitting of bras, the components of bras, the function of bras and the purpose of bras in a woman's wardrobe," a motion the court granted.  *Id*. at 534-35.  Ms. Johnson testified,

---

[10] In using the term "camisole," Ms. Armillas explained that she was referring to a type of garment worn on the upper body that usually covers the body from the top of the breast to the waist.  Tr. 408.

*inter alia*, that in her opinion the Bodyshaper "is a camisole and not a bra" because, in her

opinion, the main purpose of a bra is as a foundation garment that provides "shape and support

and lift." *Id.* at 538-39.  Ms. Johnson's testimony, taken as a whole, did not state or imply that

the Bodyshaper fails perform a body support function.  *See id.* at 538.

 3.  Summary of Principal Findings of Fact Pertaining to the Support Function of the Bodyshaper

   From the facts upon which the parties agreed in the joint pre-trial order, as well as a

preponderance of the evidence introduced to the record at trial, the court finds that the

Bodyshaper is designed to provide support to the bust of the wearer.  Tr. 59, 154, 401, 403, 409,

453.  The court also finds, from a preponderance of the evidence produced at trial, that a

Bodyshaper, style number 9843233, provided a certain degree of such support when worn at the

fitting of Ms. Trainer, the fit model, and that this fitting involved a Bodyshaper in Ms. Trainer's

correct garment size.  *Id.* at 46-47, 72-73, 406, 409.

   B.  Conclusions of Law Pertaining to the Choice of Heading for the Bodyshaper

   The court first considers whether plaintiff has shown the government's classification of

the Bodyshaper in subheading 6114.30.10, at 28.2% *ad val*, to be incorrect.  *Jarvis Clark Co.*,

733 F.2d at 876.  The court concludes that plaintiff has not made this showing.  The court sets

forth its reasoning below.

   1.  The Bodyshaper Is Properly Classified under Heading 6114, HTSUS

   The court's inquiry begins with GRI 1, under which the court considers terms of headings

and any relative section and chapter notes.  GRI 1, HTSUS.  The headings of section XI of the

HTSUS ("textiles and textile articles") encompass various textile materials, fabrics, and articles,

including articles of apparel.  Within the section, chapter 61 ("Articles of apparel and clothing

accessories, knitted or crocheted") "applies only to made up knitted or crocheted articles."

Note 1 to ch. 61, HTSUS.  Chapter 62 "applies only to made up articles of any textile fabric

other than wadding, excluding knitted or crocheted articles (*other than those of heading 6212*)."

Note 1 to ch. 62, HTSUS (emphasis added).  Because the first question is whether the

government's classification has been shown to be incorrect, *Jarvis Clark Co.*, 733 F.2d at 876

(citations omitted), the court first will determine, according to GRI 1, whether the Bodyshaper

answers to residual heading 6114.  The court concludes that it does.  None of the preceding

headings of chapter 61 includes a knit outerwear garment such as the Bodyshaper, which is an

outerwear garment designed to provide bust support.  Nor do the terms of the article description

for heading 6212 correctly describe the Bodyshaper.

Heading 6114 includes the term "[o]ther garments, knitted or crocheted."  Heading 6114,

HTSUS.  The Bodyshaper is a knitted garment.  JPO, Schedule C ¶ 8.  As shown by the relevant

Explanatory Note, heading 6114 is a residual provision that "covers knitted or crocheted

garments which are not included more specifically in the preceding headings of this Chapter

[6101-6113]."  EN 61.14.  The Bodyshaper is not described by the terms of any heading in the

group 6101-6113, HTSUS.[11]  Of those headings, only two, headings 6106 and 6109, deserve

more than passing mention.

---

[11] Described very generally and as relevant to the question presented here, the scopes of
the HTSUS headings in the group pertain to the following types of knitted or crocheted
garments: men's and boy's coats (6101); women's and girls' coats (6102); men's and boy's suits,
ensembles, jackets, overalls, trousers, and shorts (6103); women's and girls' suits, ensembles,
jackets, dresses, skirts, overalls, trousers, and shorts (6104); men's shirts (6105); women's shirts
and blouses (6106); men's underwear other than undershirts (6107); women's underwear other
than undershirts (6108); T-shirts, singlets, tank tops and similar garments, for both sexes (6109);
sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles (6110); babies' clothing
(6111); track suits, ski-suits and swimwear (6112); and garments made of coated fabrics (6113).

Heading 6106, HTSUS, with the article description "[w]omen's and girls' blouses, shirts, and shirt-blouses, knitted or crocheted," does not describe the Bodyshaper, which for tariff classification purposes is not a "blouse," "shirt," or "shirt-blouse."  The General Explanatory Note to HS chapter 61 provides that "[s]hirts and shirt[-]blouses are garments designed to cover the upper part of the body, having long or short sleeves and a full or partial opening starting at the neckline."  EN to ch. 61.  The Bodyshaper lacks sleeves and an opening starting at the neckline.  The General Explanatory Note to HS chapter 62 adds that "[b]louses are also designed to cover the upper part of the body but may be sleeveless and without an opening at the neckline."  EN to ch. 62.  Therefore, sleeveless "blouses" are not excluded from heading 6106 (*cf.* note 4 to ch. 61, HTSUS ("Heading 6105 [men's and boy's shirts] does not cover sleeveless garments")), but the Bodyshaper does not conform to any common definition of the term "blouse."  As applied in the context of a women's garment, the definition of a "blouse" is "a loose-fitting garment covering the body from the neck to the waist or just below, made with or without a collar, sleeves, or belt, and worn over or tucked inside a waistband (as of a skirt)."  *Webster's Third New International Dictionary of the English Language (Unabridged)* 239 (1993) ("*Webster's Dictionary*").  The Bodyshaper is not "loose fitting," and it has a low neckline, no part of which extends upward as high as the wearer's neck.  Pl.'s Ex. 11, Def.'s Ex. A.

The scope of heading 6109, HTSUS, which carries the article description "T-shirts, singlets, tank tops and similar garments, knitted or crocheted," does not include a garment such as the Bodyshaper, which contains a component (the "shelf bra" component) designed to provide bust support.  In *Victoria's Secret Direct, LLC v. United States*, 37 CIT __, Slip Op. 13-55 (2013) ("*Victoria's Secret Direct*"), this Court construed the scope of heading 6109, HTSUS,

which was the heading principally advocated by the government for classification of the garment

(the "Bra Top") at issue in that case.  This Court concluded that heading 6109, HTSUS, which is

limited to undershirts and garments adapted from undershirts as outerwear, was never intended to

include a garment such as the Bra Top, which like the Bodyshaper featured an internal

bust-supporting component marketed as a "shelf bra."  *Id.* at __, Slip Op. 13-55, at 16-27.  The

Bra Top at issue in *Victoria's Secret Direct*, a knitted women's outerwear garment with no

sleeves, a scooped neck in the shape of a wide U, and narrow straps, was highly similar to the

Bodyshaper at issue in the case at bar.  The only significant differences were that the Bra Top

had non-adjustable straps and was made up of fabric of predominantly cotton, as opposed to

synthetic, fiber.[12]  JPO, Schedule C ¶¶ 9, 16; Pl.'s Ex. 11; Joint Pretrial Order, Schedule C ¶ 4

(Nov. 28, 2011), ECF No. 53 (Court No. 07-00347); Pl.'s Ex. 3 (Court No. 07-00347).

Like the Bra Top, the Bodyshaper falls outside of the intended scope of heading 6109,

HTSUS ("T-shirts, singlets, tank tops and similar garments, knitted or crocheted") because of the

presence of the bust-supporting shelf bra component.  The drafters of the Harmonized System

used terms for HS heading 61.09 ("T-shirts, singlets and other vests, knitted or crocheted")

signifying that all garments classifiable under the heading are undershirts or outerwear garments

adapted from undershirts.  *See* EN 61.09 (giving as an example of a heading 61.09 garment a

T-shirt with pictures or writing).  As effectuated in the HTSUS, the article description for

heading 6109 does not use the term "vests" (which in British English, but not in American

English, refers principally to undershirts) and includes the term "tank tops."  However, there was

no intent on the part of Congress, when modifying the heading to use American English

---

[12] Also, the Bra Top had a wide U-shaped neck opening in the back rather than a straight
neck opening at the back, as does the Bodyshaper.  Pl.'s Ex. 3 (Court No. 07-00347).

terminology, to expand the heading beyond the scope intended by the drafters of the HS.  *See*

*Victoria's Secret Direct*, 37 CIT at __, Slip Op. 13-55, at 20-27.  As the opinion in that case also

noted, upper-body underwear garments with bust-supporting features (which are classified under

heading 6212) are expressly excluded from heading 6109 by note 2(a) to chapter 61, HTSUS,

and it would be unwarranted to conclude that an outerwear bust-supporting garment could find

classification under heading 6109 simply because it is designed to be worn as outerwear.  *Id.*

at __, Slip Op. 13-55, at 19-20.  To attempt to classify a garment such as the Bra Top or

Bodyshaper under heading 6109 would be to expand the scope of the heading impermissibly,

beyond that intended by the drafters of the HS and the Congress.

        Plaintiff claims that the Bodyshaper is properly classified under heading 6212, HTSUS.

Plaintiff cites note 2(a) to chapter 61 ("[t]his chapter does not cover . . . [g]oods of

heading 6212") in support of this claim, arguing, *inter alia*, that the government's classification

within chapter 61 is inconsistent with this note.  Pl.'s Mem. 46-47; Pl.'s Resp. 26-27; Compl.

¶¶ 10-22.  The court disagrees.  For plaintiff to have a valid claim, the Bodyshaper must fall

within the intended scope of heading 6212, HTSUS, as signified by the terms of that heading

("Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof,

whether or not knitted or crocheted").  The court concludes, to the contrary, that the Bodyshaper

falls outside the intended scope of the heading.

        Of the *eo nomine* terms in heading 6212, only the term "brassiere" conceivably could

describe the Bodyshaper.  However, the court's research has not found a standard dictionary

definition of the term "brassiere" to which the Bodyshaper conforms, and plaintiff offers none.

EN 62.12 instructs that the heading includes "[b]rassieres of all kinds," connoting that a garment

not designed to be worn as underwear, such as one of a class of garments referred to in

commerce as "sports bras," falls within the scope of the heading.  Indeed, one Webster's

definition of "brassiere" is a "woman's close-fitting undergarment having cups for bust support,

varying in width from a band to a waist length bodice, made with or without straps, and often

boned or wired for additional support or separation; also: *an adaptation of this garment for

sportswear*." *Webster's Dictionary* 269.[13]  The Bodyshaper is neither a women's undergarment

designed to provide bust support (as required by the common definitions of "brassiere") nor an

adaptation of such an undergarment for sportswear (*i.e.*, a sports bra).  The court concludes that

the Bodyshaper is not defined by the *eo nomine* term "brassiere" as used in heading 6212,

HTSUS.

The court next considers whether the Bodyshaper is described by the term "and similar

articles" contained within the heading 6212 article description.  In determining tariff

classification under the HTSUS, the Court of Appeals has construed a general term or phrase

such as "and similar articles" according to the statutory construction principle of *ejusdem

generis*.[14]  "In classification cases, *ejusdem generis* requires that . . . the merchandise must

possess the same essential characteristics or purposes that unite the listed examples preceding the

general term or phrase." *Avenues in Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed.

Cir. 1999) (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)).  "Classification

---

[13] Other lexicographic sources confine the definition of "brassiere" to an article of
underwear.  *Oxford English Dictionary* defines a brassiere as "[a] woman's undergarment worn
to support the breasts."  2 *Oxford English Dictionary* 494 (2d ed. 1989).  *The Fairchild
Dictionary of Fashion*, a lexicographic source for the fashion and apparel industry, specifies that
a brassiere is "[a] shaped undergarment worn by women to mold and support the breasts." *The
Fairchild Dictionary of Fashion* 463 (3rd ed. 2003).

[14] *Ejusdem generis* is "[a] canon of construction holding that when a general word or
phrase follows a list of specifics, the general word or phrase will be interpreted to include only
items of the same class as those listed."  *Black's Law Dictionary* 594 (9th ed. 2009).

. . . is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars." *Id.* (citations omitted).

The Explanatory Note to heading 62.12 identifies two classes of articles that are classified under the heading: "articles of a kind designed for wear as body-supporting garments" and "supports for certain other articles of apparel . . . ." EN 62.12. All of the exemplars in the heading 6212 article description—brassieres, girdles, corsets, braces, suspenders, and garters—have as their essential characteristic and purpose either support of a part of the body or support of a garment.

The Bodyshaper provides bust support, but it would be inconsistent with facts the court found in this case to conclude that body support is *the* essential characteristic or purpose of this garment. As the court found by a preponderance of the evidence, the Bodyshaper combines in one garment an outer camisole "shell" and a "shelf bra" brassiere. *See* Tr. 57 (testimony of Ms. Grey), Tr. 401, 403, 461 (testimony of Ms. Armillas). The outer shell, which is not a brassiere, provides the coverage to the torso required of a garment designed to be worn as an outerwear top. The uncontested facts establish that the outerwear shell provides partial covering of the wearer's torso for warmth and modesty. JPO, Schedule C ¶¶ 7, 24-25; Tr. 59-60 (testimony of Ms. Grey that the Bodyshaper was "designed to be worn as a top" or "as a layering piece with either a blouse, jacket, or sweater over it"), 104, 154. And as the court found from its *in camera* examination of the samples, the outerwear "camisole shell" component entirely conceals the shelf bra component, other than the straps, and extends well below the shelf bra component.[15]

---

[15] As the court also found by a preponderance of the evidence, the "shelf bra" component of the subject garment requires for its function the straps that also are necessary to the camisole (continued…)

Pl.'s Ex. 11, Def.'s Ex. A.  The larger of the two components, the camisole shell is entirely

dissimilar to a brassiere.  Although the fabric of the outer shell is elastic and thereby provides

"somewhat of a compression along the torso" and "somewhat of a slimming appearance to the

body," Tr. 59 (testimony of Ms. Grey), the court does not consider the record evidence sufficient

to allow the court to reach a finding of fact that the outer shell, when considered apart from the

shelf bra, is designed to achieve a body "support" function.  As the court also found, it is the

shelf bra component that provides bust support to the wearer.  The court notes, further, that the

Bodyshaper does not conform to an established meaning of the fashion term "bodyshapers":

"*undergarments* designed to control and support the figure.  Also called shapewear." *The*

*Fairchild Dictionary of Fashion* 463 (3rd ed. 2003) ("*Fairchild Dictionary*") (emphasis added).

The three garments listed as exemplars in heading 6212—brassieres, girdles, and

corsets—are almost invariably designed to be worn as undergarments, and the one exception, the

sports bra, is by definition an adaptation of a body-supporting undergarment designed for use as

sportswear.  In contrast, the Bodyshaper is an outerwear garment with an outer camisole shell

that does not provide body support but conceals the shelf bra, extends to the waist, and allows

the Bodyshaper to serve its outerwear purpose.

In summary, the court concludes that the Bodyshaper is not a garment of a type that is

properly classified under heading 6212, HTSUS, being dissimilar to the garments listed in the

article description with respect to the essential characteristic and as to purpose.  The facts as

found by the court are sufficient to demonstrate that the shelf bra component of the Bodyshaper

is similar in construction and purpose to some types of brassieres, notably "soft-cup" brassieres

(continued…)

component.  Tr. 57, 159 (testimony of Ms. Grey); Tr. 470-71 (testimony of Ms. Armillas).  In
that respect, the shelf bra component cannot, by itself, be described as a complete brassiere.

with a single cup and an elastic underbust band.  *See*, *e.g.*, Tr. 70 (testimony of Grey); Tr. 401,

409, 453 (testimony of Ms. Armillas).  Those same facts do not allow the court to conclude that

the Bodyshaper *on the whole* is "similar" to a brassiere or to any other garment or article named

in the heading.  Discussing the consideration of the "characteristics or purposes" of an article, the

Court of Appeals has instructed that the "analysis must consider the imported merchandise *as a*

*whole*."  *Avenues in Leather, Inc.*, 178 F.3d at 1246 (emphasis added).  And as the Court of

Appeals further stated,"[w]hen imported merchandise contains additional 'nonsubordinate or

coequal' characteristics or purposes than a specific article listed as an exemplar, the merchandise

is not classifiable as that article."  *Id.* (citation omitted).

        Plaintiff makes several arguments in support of its heading 6212 classification claim that

were considered and rejected by this Court in *Victoria's Secret Direct*, 37 CIT at __, Slip Op.

13-55, at 34-38.  The arguments advanced by Lerner are substantively identical to those of

Victoria's Secret Direct, as each plaintiff submitted identical joint post-trial briefing.  *See* Pl.'s

Mem. 25 (stating that "[t]he [Victoria's Secret Direct] Bra Top and Lerner Bodyshaper are

within the scope of Heading 6212 because they incorporate a brassiere, which is one of the

exemplars in the heading, and they are 'similar' to articles found *eo nomine* in the heading");

Compl. ¶¶ 11-26 (Nov. 21, 2007), ECF No. 5 (Court No. 07-00347).  Considering those

arguments anew, the court concludes that the arguments are not persuasive for the determination

of classification of the Bodyshaper.  The court sets forth its reasoning below.

        In support of its primary classification claim, Lerner advances an argument grounded in

GRI 1 and one reliant on GRI 3.  Plaintiff's GRI 3 argument is that heading 6212 is preferred to

headings 6109 and 6114 by application of the rule of relative specificity, GRI 3(a), and if

GRI 3(a) is not dispositive, heading 6212 is preferred as it is "last in numerical order,"

GRI 3(c).[16]  Pl.'s Resp. 27-29; Pl.'s Mem. 48-52.  The court rejects this argument as a

misapplication of the GRIs.  GRI 3, which is not to be applied if the question of the proper

heading is resolved by application of GRIs 1 and 2, applies if the merchandise is "*prima facie*[]

classifiable under two or more headings . . . ."  GRI 3, HTSUS.  Note 2(a) of Chapter 61,

HTSUS, which GRI 1 directs the court to consult along with the terms of the headings, excludes

from chapter 61 (and therefore from heading 6114) the goods of heading 6212.  Were the

Bodyshaper described by a term of heading 6212, no "relative section or chapter notes," GRI 1,

HTSUS, would exclude it from that heading, and it would be classified thereunder regardless of

relative specificity or the numerical order of the headings.

     Plaintiff's GRI 1 argument for classification of the Bodyshaper under heading 6212

alludes to the "broad scope" of that heading.  Pl.'s Resp. 23-26; Pl.'s Mem. 47-48.  Plaintiff

argues that "[w]hat is critical and material for classification under Heading 6212 is that the

garment provides support, not that each and every component in the product be dedicated to

performing the support function."  Pl.'s Resp. 24.  Plaintiff cites *Van Dale Indus. v. United

States*, 18 CIT 247, 1994 WL 118415 (1994) ("*Van Dale I*") in making this argument,

maintaining that the Bodyshaper has "some support feature," which is "what the garments in

Heading 6212 have in common."  *Id*. at 25; Pl.'s Mem. 29-30.

     Plaintiff's GRI 1 argument misconstrues the meaning of the term "and similar articles" as

used in heading 6212.  As the court discussed *supra*, garments other than the named garments

(brassieres, girdles, and corsets) may be considered to be within the meaning of the term "and

---

     [16] Plaintiff submits that GRI 3(b) is not implicated in this case because Bodyshapers "are
not '[m]ixtures, composite goods consisting of different materials or made up of different
components, and goods put up in sets for retail sale . . . .[']"  Resp. to Def.'s Post-Trial Br. 29
(Mar. 23, 2012), ECF No. 70 (quoting *Photonetics, Inc. v. United States*, 33 CIT ___, ___, 659 F.
Supp. 2d 1317, 1333 (2009)).

similar articles" only if body support is the *essential* characteristic and purpose of the

merchandise when viewed as a whole, as it is for the three named garments.  *See Avenues in*

*Leather, Inc.*, 178 F.3d at 1244, 1246 (citations omitted).  It is insufficient for classification

under heading 6212 that body support merely be *among* the characteristics or purposes of the

garment.  The shelf bra component, together with the adjustable straps that serve as components

of both the outerwear shell and the shelf bra, allows the garment to perform the bust support

function, but it is the outer shell, the largest component, that allows the Bodyshaper to function

as an outerwear garment.

The holding in *Van Dale I* does not support plaintiff's GRI 1 argument.  The case

involved women's or girls' underwear tops classified by Customs under heading 6109, for which

the importer claimed classification under heading 6108 as women's or girls' underwear or in the

alternative under heading 6212.  *Van Dale I*, 18 CIT at 247, 1994 WL 118415 at **1.  In *Van*

*Dale I*, the Court of International Trade noted that the garment in question "d[id] not provide

support to the breasts or to any other body part," denied the claim for classification in

heading 6212, and affirmed the government's classification under heading 6109.[17]  18 CIT

at 252, 1994 WL 118415 at **4.  Plaintiff relies on the following statement in the opinion:

"Consistent with the Explanatory Notes, garments that provide little support would be properly

classifiable under Heading 6212, whereas garments that provide no support at all would be

classified elsewhere."  *Id.*  This statement is plainly *dicta*, the garment at issue in *Van Dale I*

---

[17] On appeal, the plaintiff abandoned its claim for classification under heading 6212, and
therefore the Court of Appeals, in affirming the judgment of the Court of International Trade, did
not consider whether the garment at issue was classifiable under that heading.  *Van Dale Indus.*
*v. United States*, 50 F.3d 1012, 1014 n.1 (Fed. Cir. 1995).

having been found to provide no body support.  No precedent binding in this case stands for the principle that heading 6212 encompasses any garment that provides but "little support."

Plaintiff argues that heading 6212 is proper because "brassieres" constitute the "class or kind" of garments to which the Bodyshaper belongs, as the Bodyshaper contains a brassiere, which is provided for *eo nomine* in heading 6212.  Pl.'s Mem. 30-37.  Relying on the multi-factor test sometimes used by courts to ascertain the "class or kind" of merchandise covered by a tariff provision, as set forth in *United States v. Carborundum Co.*, 536 F.2d 373, 377 (1976) ("*Carborundum*"), plaintiff submits that "[i]t is undeniable that the subject garments are designed, marketed, sold, and used as garments that provide support to the wearer in the same manner as a brassiere" and should therefore "be considered to be garments that are 'similar' to brassieres--and that are provided for in Heading 6212." *Id*. at 37.

Plaintiff's reliance on *Carborundum* is misplaced.  *Carborundum* is a case decided under the former tariff, the TSUS.  Under the HTSUS, a *Carborundum* analysis has been applied to determining class or kind of merchandise for purposes of a "principal use" provision governed by Additional U.S. Rule of Interpretation 1(a), HTSUS.  *See Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312-13 (Fed. Cir. 2012).  The question presented here does not involve the construction of the statutory term "class or kind to which the imported goods belong" (as does ARI 1(a)), but instead involves the question of whether a Bodyshaper is an article "similar to" the articles mentioned *eo nomine* in heading 6212.

Moreover, even were the two legal tests considered to be the same, plaintiff's argument still would not be convincing.  Any *Carborundum* analysis applied in this case would have to contend with the evidence that the "class or kind" of garments to which the Bodyshaper belongs must possess not only the support features of a brassiere but also the non-support features of an

outerwear "top." Tr. 57, 59, 401, 403, 461. Plaintiff has not introduced evidence from which the

court could find that the Bodyshaper belongs to a class or kind of garments identified in

commerce by the term "brassiere" or any other term in heading 6212.

Plaintiff argues that in classification rulings "CBP has recognized administratively that

advances in fashion and technology require the scope of Heading 6212 to be extended to

outerwear garments that provide support." Pl.'s Resp. 15. Relying on Customs classification

rulings spanning the past twenty years, plaintiff points to several garments, including a sports

bra, costume bustier, "support" shorts that provide a knee taping function, and heavily

embellished brassieres, classified by Customs under heading 6212 despite being worn as

outerwear. *Id.* at 14-21 (citing Customs HQ 951264 (July 1, 1992) (RE: Revocation of

HRL 089778) (11/7/91) (sports bra); Customs HQ W968373 (Nov. 15, 2006) ("Gangsta Lady"

costume bustier); Customs HQ 965621 (Oct. 16, 2002) (knee support shorts); and Customs

HQ 950685 (Mar. 11, 1992) (embellished underwire and long-line brassieres)). Plaintiff

considers these rulings to demonstrate that "it is clearly the support function (and not the

characterization as underwear) that is the common feature of the items in Heading 6212." *Id.*

at 22.

Customs administrative rulings are not binding on the court, and rulings such as those

cited by plaintiff are not entitled to deference where, as here, they do not pertain to the

merchandise under consideration. Moreover, as the court discussed previously, the garments

identified *eo nomine* in heading 6212 are either underwear support garments or adaptations of

them (*e.g.*, sports bras). The sports bra ruling plaintiff cites is not instructive because the

Bodyshaper is not an adaptation of a brassiere and is not similar to a sports bra. Nor are the

other Customs rulings plaintiff cites, even if presumed to be correct, instructive. The costume

bustier addressed in HQ W968373 and the knee support shorts of HQ 965621 are so dissimilar to

the Bodyshaper as to provide no meaningful guidance in this case.

     Finally, plaintiff argues that classification of the Bodyshaper under heading 6212 is

"historically consistent with both the evolution of the modern tariff and the structure of prior

tariff provisions."  Pl.'s Mem. 8, 52.  According to plaintiff, "[u]ltimately, the U.S. tariff has

always contemplated that brassieres (and other support articles) may be attached to clothing."  *Id*.

at 57.  In support of its position, plaintiff surveys predecessor tariffs, through which it attempts to

demonstrate that the current tariff language demonstrates the drafters' intent to include garments

such as the Bodyshaper within heading 6212.  *Id*. at 53-58.  Plaintiff cites a term in the Tariff Act

of 1930: "[W]earing apparel or articles to which a 'brassiere[] . . . [or] similar body-supporting

garment[]' . . . is attached."  *Id*. at 53 (citing Tariff Act of 1930, 71st Cong., 2d Sess., Ch. 497,

p. 666, ¶ 1529(c) (1930)).[18]  Plaintiff's argument is unpersuasive because it is at odds with the

proper construction of the terms in the heading 6212 article description.  Further, plaintiff cites

no legislative history to demonstrate an intent on the part of the drafters of the Harmonized

System, or of the U.S. Congress when effectuating the HS in the HTSUS, that heading 6212 was

ever intended to be so broad as to include a garment with the characteristics of the Bodyshaper.

     <u>2.  The Bodyshaper Is Properly Classified in Subheading 6114.30.10, HTSUS</u>

     Because the court concludes, for the reasons discussed above, that heading 6114, HTSUS

is the appropriate heading for classification of the Bodyshaper by application of GRI 1, the

---

[18] The court notes that the phrase "similar articles" used in heading 6212, HTSUS, corresponds to the phrase "similar body-supporting garments" in TSUS Item 376 (1963).  In turn, the phrase "similar body-supporting garments" in the TSUS corresponds to the phrase "all similar body-supporting garments" in paragraph 1529(c) of the Tariff Act of 1930.  The phrase "all wearing apparel or articles to which, any of the foregoing . . . is attached" does not appear in the language of the HTSUS.

remaining question is the determination of the appropriate subheading.  Defendant claims

classification under subheading 6114.30.10 ("Of man-made fibers: Tops").  Answer 4;

Compl. ¶ 9.  The court determines that this classification is correct.

As required by GRI 6, the court determines the appropriate subheading from among the

subheadings of heading 6114 "according to the terms of those subheadings and any related

subheading notes and, *mutatis mutandis*, to the above rules [GRIs 1 through 5], on the

understanding that only subheadings at the same level are comparable."  GRI 6, HTSUS.  The

first level of subheadings under heading 6114 (*i.e.*, subheadings with six digits) divides the

heading into four categories, based on the textile material of the fabric from which the garment is

made.  The Bodyshaper is a blend of 92% nylon and 8% spandex, JPO, Schedule C ¶ 9, both of

which are man-made (or synthetic) fibers, *see* 16 C.F.R. § 303.7 (2005) (describing nylon and

spandex as synthetic polyamides and polymers, respectively).[19]  Subheading 6114.30, HTSUS,

which describes garments made "[o]f man-made fibers," is thus the appropriate subheading.[20]

Within subheading 6114.30 are three potential subheadings at the next (eight-digit) level,

which create categories based on garment type: subheading 6114.30.10 ("Tops"), subheading

6114.30.20 ("Bodysuits and bodyshirts"), and residual subheading 6114.30.30 ("Other").  The

---

[19] 16 CFR § 303.7 are regulations of the U.S. Federal Trade Commission ("FTC") for the
Textile Fiber Products Identification Act, which sets forth the generic names and definitions
established by the FTC for manufactured fibers.  *See* 16 CFR §§ 303.7(i), (k) (2005) (describing
nylon as "[a] manufactured fiber in which the fiber-forming substance is a long-chain synthetic
polyamide in which less than 85 percent of the amide linkages are attached directly to two
aromatic rings" and spandex as "[a] manufactured fiber in which the fiber-forming substance is a
long chain synthetic polymer comprised of at least 85 percent of a segmented polyurethane").

[20] Of the other subheadings under heading 6114, HTSUS, subheading 6114.10.00 covers
garments made "[o]f wool or fine animal hair," subheading 6114.20.00 covers garments made
"[o]f cotton," and 6114.90 is a residual subheading that covers garments knitted "[o]f other
textile materials."  The residual provision is thus limited to garments made of a natural fiber
*other* than wool, fine animal hair, or cotton.

undisputed facts of this case demonstrate that the Bodyshaper answers to the description of

subheading 6114.30.10 as a "[t]op," which *Fairchild Dictionary* defines as a category of

"[c]lothing worn as a blouse or shirt substitute with pants or a skirt mainly for sportswear, and

sometimes for evening." *Fairchild Dictionary* 34; *see* JPO, Schedule C ¶¶ 4, 7, 24-25.  The

Bodyshaper does not, on the other hand, answer to the term "bodysuit" or "bodyshirt." *Fairchild*

*Dictionary* 40 (defining bodysuit as a "[o]ne piece fitted garment without legs having a snap

crotch" and bodyshirt as an adaptation of a bodysuit with a "'blouse' or 'shirt' style[,] in a

variety of fabrics, suede, or leather"); Pl.'s Ex. 11, Def.'s Ex. A.  As discussed previously, the

Bodyshaper is dissimilar to a blouse or shirt, and the record facts do not support a conclusion that

it is an adaptation of a bodysuit.  Therefore, subheading 6114.30.10, HTSUS, is the correct

subheading.

## III. CONCLUSION

        For the reasons stated above, the court concludes that the correct tariff classification for

the Bodyshaper is subheading 6114.30.10, HTSUS, subject to duty at 28.2% *ad val*., the tariff

classification and rate of duty determined by Customs upon liquidation.  Judgment will enter

accordingly.


                                                            /s/ Timothy C. Stanceu
                                                            Timothy C. Stanceu
                                                            Judge


Dated: May 1, 2013
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LERNER NEW YORK, INC.**, | |
| Plaintiff, | **Before: Timothy C. Stanceu, Judge** |
| v. | **Court No. 07-00361** |
| **UNITED STATES**, | |
| Defendant. | |

### JUDGMENT

Upon consideration of the record evidence, the post-trial briefs submitted by plaintiff

Lerner New York, Inc. ("Lerner") and defendant United States, and all papers and proceedings

herein, and in accordance with the court's Opinion issued this date, it is hereby

**ORDERED** that the classification determined by U.S. Customs and Border Protection
upon liquidation of Entry No. 113-3085123-6, classifying the merchandise therein, style number
9843233 (the "Bodyshaper"), in subheading 6114.30.10, HTSUS (2005), subject to duty at
28.2% *ad val.*, is sustained.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: May 1, 2013
New York, New York